**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**


CLIFTON RICHARD SKIDGEL,

      Plaintiff,


v.                                                             CIV  NO. 06-385 RB/ACT


DON DOUGLAS and WEXFORD HEALTH
SOURCES,

      Defendants.


**MAGISTRATE JUDGE'S PROPOSED FINDINGS**
**AND RECOMMENDED DISPOSITION**

      THIS MATTER COMES before the Court on an Order of Reference from the District Court Judge to the Magistrate Judge to recommend ultimate disposition of this case. [Doc. No. 5].  Having reviewed the *Martinez Report*, the Motion for Summary Judgment filed by Defendants Don Douglas and Wexford Health Sources, the Response to the Motion and the Reply [Doc. Nos. 55, 56, 57 and 60], the Magistrate Judge recommends that Summary Judgment be granted in favor of the Defendants on all remaining claims in this lawsuit.  There are no material issues of fact in dispute and the moving parties, the Defendants, are entitled to judgment as a matter of law.

## HISTORY OF THIS LITIGATION

Plaintiff Clifton Richard Skidgel brought this Complaint on May 5, 2006, under 42 U.S.C. § 1983 alleging violations of his civil rights. [Doc. No. 1]. The Complaint contained seven counts and originally named five Defendants. Plaintiff is currently incarcerated in a New Mexico correctional facility and is proceeding *pro se*. While Plaintiff was granted *in forma pauperis* status, he paid the filing fee in full shortly after he filed the Complaint.

In August, 2006, the District Court Judge to whom this case is assigned, Judge Robert Brack, entered an Order dismissing Count V of the Complaint and dismissing Defendant Lindsey Brininstool. [Doc. No. 10]. Plaintiff was allowed to amend the Complaint to add two more Defendants, Erma Sedillo, the Deputy Secretary of Corrections and Sandra McFadin, Warden of Programs. Judge Brack, however, found, in the same opinion granting the Plaintiff his motion to amend the Complaint, that the proposed Amended Complaint did not allege any personal involvement by these two Defendants in the alleged constitutional violations and ordered that these two Defendants be dismissed. [Doc. No. 10].

Defendants Kathleen Nestor and Zinat Sobhani filed Motions for Summary Judgment on the issue of claim preclusion. After the motions were fully briefed, the Magistrate Judge recommended that the Motions for Summary Judgment filed by Defendants Nestor and Sobhani be granted. [Doc. No. 51]. Judge Brack adopted the Report and Recommended Disposition thereby granting judgment in favor of Defendants Nestor and Sobhani and dismissing Counts II and VII and portions of Count I. [Doc. No. 58]. The Magistrate Judge also recommended that the Complaint be amended to reflect the correct name of Defendant Wexford Health Sources but not be amended to add another claim sought by Plaintiff. Judge Brack adopted this Report and

Recommendation as well. [Doc. Nos. 52 and 59]. Throughout these proceedings, discovery was stayed.

The Court ordered the Defendants to file an extensive *Martinez Report*, which was done on March 6, 2007. [Doc. No. 55]. Along with the *Martinez Report*, the two remaining Defendants, Douglas and Wexford Health Sources, filed a Motion for Summary Judgment. It is this Motion which the Court now recommends be granted in full thereby granting judgment in favor of the two Defendants Douglas and Wexford Health Sources which will, in turn, terminate this case.

PLAINTIFF HAS EXHAUSTED HIS ADMINISTRATIVE REMEDIES

Every prisoner who brings a civil rights action challenging prison conditions in federal court must first meet the mandatory exhaustion requirements of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). Plaintiff has met the requirements of the Act by filing Inmate Informal Complaints and Inmate Grievances, which are included in the *Martinez Report* as Exhibits C001 through C041[1]. The relevant documents are dated March 28, 2005 (C001- C006) and March 16, 2006. (C007-C015, C016-C024, C033-C041). These particular documents are Plaintiff's complaints that he did not receive proper or timely medical care for his hernia, did not receive proper or timely medical care for his chest pains, did not receive his requested dentures and did not receive his requested hearing aids. Every one of these Inmate Complaints and Grievances was denied by prison officials as being without merit.

---

[1] The remaining Inmate Complaints and Inmate Grievances included in the *Martinez Report* involve issues surrounding Plaintiff's mental health treatment. Plaintiff's mental health treatment is no longer at issue in this lawsuit.

Defendants argue that Plaintiff has failed to exhaust his administrative remedies as against Defendant Douglas because none of the above referenced Inmate Informal Complaints or Inmate Grievances name Defendant Douglas or are directed in particular against him. However, the U.S. Supreme Court has recently held that the failure by inmates to name specific individuals during the administrative grievance process who are later named as defendants in the resulting lawsuit does not automatically render the exhaustion process inadequate. Jones v. Bock, __ U.S. __ , 127 S. Ct. 910, 923 (2007). Rather, the court must determine under the particular circumstances of each case whether the exhaustion requirement was satisfied by the prisoner. Id. The purpose of the PLRA exhaustion requirement is to alert prison officials to a potential problem, not to provide personal notice to a particular prison official that he might be sued later in a civil rights action. Id.

The Court finds that Plaintiff's complaints and grievances filed as precursors to this lawsuit, although not naming Defendant Douglas individually, were sufficient to alert the prison officials as well as the health services providers that Plaintiff perceived a problem with his medical care. Plaintiff has fulfilled the exhaustion requirements of the PLRA.

## SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) directs that summary judgment will be granted when the court, viewing the record in the light most favorable to the non-moving party, determines that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See, Thrasher v. B & B Chemical Co., 2 F.3d 995, 996 (10th Cir. 1993).

The movant bears the initial burden of showing "there is an absence of evidence to support

the nonmoving party's case." Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F. 2d 887, 891 (10th Cir. 1991).  Once the movant meets this burden, Rule 56 (e) requires the nonmoving party to go beyond the pleadings and present evidence or designate specific facts showing that there is a genuine issue for trial.   Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The Court ordered the *Martinez Report* to include:

1) documents setting out the facts needed to resolve the claims, including but not limited to Plaintiff Clifton Skidgel's medical records from November, 2004 (three months before his transfer to Lea County Correctional Facility or LCCF) to the present;

2) copies of all the grievances listed in Plaintiff's Complaint and any grievances filed subsequent to the date of the Complaint  regarding chest pains, a hernia, hearing aids and dental appliances or dentures, decisions made by correctional officers in response to these grievances, and information relied upon by correctional officers in responding to the grievances;

3) affidavits in support of the Report, if necessary; and

4) any other information Defendants deem necessary to clarify the factual allegations in Plaintiff's Complaint.

The Court also informed the parties that it may use the *Martinez Report*  in deciding whether to grant summary judgment on Plaintiff's claims. [Doc. No. 28].   Even though discovery has been stayed, this stay has not prevented the Plaintiff from responding to the Motion for Summary Judgment or the *Martinez Report*.  Plaintiff responded to both the *Martinez Report* and the Motion for Summary Judgment, attaching his own exhibits.

Viewing the record in the light most favorable to the Plaintiff, the Court finds that the *Martinez Report*, Plaintiff's exhibits, Plaintiff's pleadings and Defendants' exhibits filed in support of their Motion for Summary Judgment, establish that there are no disputed issues of material facts in existence in this case and that Defendants are entitled to judgment as a matter of law. The Court finds that there is no evidence that Plaintiff has suffered a violation of his civil rights pursuant to 42 U.S.C. § 1983. Nor has Plaintiff been able to present evidence or designate specific facts showing that there is any dispute as to any material issue that would support his claim that he suffered a violation of his civil rights. The Court recommends therefore that summary judgment be granted in favor of Defendants Douglas and Wexford Health Sources and that the case be dismissed with prejudice.

## PLAINTIFF'S CLAIMS

Plaintiff alleges in his Complaint that Defendants Wexford Health Sources and Don Douglas violated his civil rights guaranteed to him by the Fifth, Eighth and Fourteenth Amendments by subjecting him to cruel and unusual punishment by their deliberate indifference to his medical and mental health needs. The mental health claims are no longer before this Court. [Doc. Nos. 51 and 58]. The Counts that remain are Count I alleging a general denial by these two Defendants of medical treatment to the Plaintiff, Count III alleging that Defendants refused to treat Plaintiff's hernia and chest pains, Count IV alleging that Defendants refused to provide dental services to replace Plaintiff's dental appliances (dentures), and Count VI alleging that Defendants refused to provide Plaintiff with needed hearing aids.

The allegations of the Complaint against these two Defendants are rooted in the Eighth

Amendment, applicable to the states by the Fourteenth Amendment. It is well established that the Eighth Amendment prohibits deliberate indifference to the serious medical needs of prisoners because to do so would constitute the infliction of cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97 (1976). But to establish a cruel and unusual punishment claim in violation of the Eighth Amendment, the Plaintiff must allege, and eventually prove, acts or omissions by the Defendants sufficiently harmful to evidence deliberate indifference to his serious medical needs. Estelle, supra at 106.

There are two components to an Eight Amendment claim, the objective component and the subjective component. Kikumura v. Osagie, 461 F. 3d 1269 (10th Cir. 2006). To satisfy the objective component, the alleged deprivation or delay in medical treatment must be sufficiently serious to constitute a deprivation of constitutional dimension. Id., at 1292, quoting Self v. Crum, 439 F. 3d 1227, 1230 (10th Cir. 2006). This is to limit claims to those involving significant suffering. Kikumura, supra, quoting Mata v. Saiz, 427 F. 3d 745, 753 (10th Cir. 2005). When, for example the alleged deprivation is premised on a delay in receiving medical care, the Plaintiff must show that the delay resulted in substantial harm. Kikumura, supra, at 1292.

To prevail on the subjective component of the deliberate indifference claim the Plaintiff must be able to show that the Defendants knew the Plaintiff faced a substantial risk of harm and disregarded that risk by failing to take reasonable measures to provide medical care or ensure that another provide medical care. Farmer v. Brennan, 511 U.S. 825, 839-840 (1994). In short, Plaintiff must allege that the Defendants not only knew that a failure or delay in providing medical care not only subjected Plaintiff to a substantial risk of serious harm, but that the Defendants consciously disregarded this substantial risk of serious harm. Id., at 839.

<u>PLAINTIFF'S COMPLAINTS REGARDING DENTURES OR HEARING AIDS
DO NOT RISE TO THE LEVEL OF A CONSTITUTIONAL VIOLATION</u>

To meet the objective component of an Eighth Amendment claim, the Plaintiff must allege that the Defendants were deliberately indifferent to a serious medical need. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." <u>Mata v. Saiz</u>, 427 F. 3d 745, 753 (10th Cir. 2005) quoting <u>Sealock v. Colorado</u>, 218 F. 3d 1205, 1209 (10th Cir. 2000). The alleged harm or injury must be sufficiently serious to implicate the Cruel and Unusual punishment clause of the Eighth Amendment, meaning that the Defendants' delay or deliberate indifference to Plaintiff's serious medical need must constitute the unnecessary and wanton infliction of pain. The purpose of this requirement is to limit claims to significant as opposed to trivial suffering. <u>Id.</u>, at 753.

Neither the alleged indifference by the Defendants to the requests for replacement dentures nor the alleged indifference to the requests for replacement hearing aids meet the objective component of an Eighth Amendment claim. There is no evidence that a dentist of a physician had mandated treatment for Plaintiff's dental needs or his hearing loss; nor is there any evidence that either condition would lead a lay person to recognize the need for a dentist's or a doctor's attention. <u>Id.</u>, at 751. Neither alleged deprivation was sufficiently serious to rise to the level of a constitutional violation. Plaintiff is unable to meet the objective component of an Eighth Amendment claim for the deliberate indifference to a prisoner's serious medical need. Therefore, Defendants are entitled to summary judgment as a matter of law on the claims concerning the alleged refusal or delay in providing dentures and hearing aids to Plaintiff.

## PLAINTIFF'S CLAIM REGARDING HIS CHEST PAINS DOES NOT MEET THE OBJECTIVE COMPONENT OF AN EIGHTH AMENDMENT CLAIM

On January 22, 2005, Plaintiff notified the health unit of Guadalupe County Correctional Facility (GCCF)[2] that he had experienced severe chest pains during the night and had lingering chest pain that day. [*Martinez Report*, Doc. No. 55, Exhibit B019]. Plaintiff had a medical appointment with a medical provider who ordered blood work and a chest x-ray. The tests indicated that Plaintiff had not suffered a heart attack. The health providers at GCCF concluded that Plaintiff had suffered an anxiety attack.

Plaintiff was transferred to Lea County Correctional Facility (LCCF) in early February, 2005, as part of a resolution of his request for mental health treatment. On March 14, 2005, Plaintiff notified the health unit at LCCF that he was having continuing chest pains. [Doc. No. 55, Exhibit B027]. On that same day a nurse examined Plaintiff who indicated to her that he was not experiencing any type of chest pain at that time. [Id.]. An appointment with a doctor was scheduled for April 21, 2005 although Plaintiff submitted evidence that he also had an appointment for March 23, 2005. [Doc. No. 55, Exhibit C001].

On March 28, 2005, Plaintiff filed his first Informal Complaint regarding his untreated chest pains. He wrote that he had submitted three requests to the medical unit regarding chest pains, the last one being March 14th, but that he had not been able to see a doctor.[3] Plaintiff

---

[2]Plaintiff's Complaint is not directed toward the health providers at GCCF and there is no claim in the Complaint regarding Plaintiff's health care at GCCF.

[3] The Court requested that the *Martinez Report* include all Plaintiff's medical records for the relevant time periods. Thus, the *Report* should have included every one of Plaintiff's requests for medical services. The *Report* only includes the one request dated March 14, 2005 in which Plaintiff complained of continuing chest pains. It does not include the two previous requests that Plaintiff claims he made prior to March 14, 2005, in which he allegedly informed the health unit he was experiencing chest pains.

complained that when he appeared for his March 23, 2005 appointment, the health unit informed him he had no appointment. [Doc. No. 55, Exhibit C001]. Defendant Douglas responded to the Complaint stating that Plaintiff had been moved to another housing unit causing his doctor appointment to be rescheduled and that he would be seen in the near future. [Exhibit C004]. However, the *Martinez Report* reflects that Plaintiff never saw a doctor for chest pains or any other reason until Plaintiff was assaulted on June 15, 2006, over a year later.

On June 19, 2005, Plaintiff was scheduled for his routine health maintenance check but he refused all health services. [Exhibit B028]. Plaintiff was seen on August 24, 2005 by a nurse in the early evening for a laceration to his finger. [Exhibit B029]. On September 14, 2005, Plaintiff again refused routine health maintenance services but the accompanying medical chart, dated that same day, noted that Plaintiff had no complaints. [Exhibits B033, 034]. Except for a request for a copy of an old hearing examination, there are no further medical records for Plaintiff until June 15, 2006 at which time Plaintiff was assaulted at LCCF, apparently by fellow inmates, and badly injured.

On March 15, 2006, Plaintiff filed a series of complaints and grievances to exhaust his administrative remedies, one each for his hernia, chest pains, hearing aids and dentures. [C007, C016, C025, C033]. Plaintiff filed this Complaint on May 5, 2006 against Defendants Wexford Health Sources and Don Douglas. The assault happened subsequent to the filing of his Complaint and has resulted in Plaintiff's transfer to the Geriatric Unit at the Los Lunas prison (CNMCF) where Plaintiff is currently residing. The assault and Plaintiff's subsequent medical treatment are not at issue in this lawsuit.

Plaintiff is alleging that Defendants' deliberate indifference in responding to his complaints

of chest pains violated his Eighth Amendment rights. In order for Plaintiff to prevail on his Eighth Amendment claim, he must allege, and eventually prove, both the objective and subjective components required of all Eighth Amendment claims brought by prisoners regarding allegations of deliberate indifference to a serious medical need. The chest pains must constitute a serious medical need to which the Defendants were deliberately indifferent. Moreover, when a Plaintiff complains that a delay in receiving medical treatment for a serious medical need amounted to deliberate indifference, he must be able to show that the delay in medical care resulted in substantial harm. Mata v. Saiz, supra, at 751. The type of substantial harm envisioned by the courts may include evidence of a lifelong handicap, permanent loss or considerable pain. Id.

Plaintiff cannot show that the chest pains he complained of in March, 2005, were of a serious nature, or that the delay in having a doctor examine him or treat him for these chest pains resulted in substantial harm. On March 14, 2005, one of the days in which he submitted a health services request form for chest pains, he told the nurse later in that day that he was not experiencing any chest pains at that time. Nor did he complain in the days or weeks afterwards of continuing chest pains. What he complained about was his canceled doctor appointment(s). A serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Mata v. Saiz, supra, at 753. There is no evidence that Plaintiff's chest pains met this definition. Nor is there any evidence that the canceled doctor appointment(s), which could arguably be construed as delay in receiving medical treatment, resulted in substantial harm to the Plaintiff. Mata v. Saiz, supra, at 751. Plaintiff has not presented any evidence, and the medical records do not reflect, that the delays by Defendants in having Plaintiff seen by a doctor for his

chest pains resulted in substantial harm such as a lifelong handicap, a permanent loss or considerable pain.

The Court finds that Plaintiff's complaints of chest pains do not meet the required objective component of an Eighth Amendment Complaint. The medical records in the Martinez Report establish that Plaintiff's chest pains did not constitute a serious medical need. Defendants are entitled to summary judgment as a matter of law on the claims that Defendants were deliberately indifferent to his complaints of chest pains.

### PLAINTIFF'S CLAIM THAT DEFENDANTS WERE DELIBERATELY INDIFFERENT TO TREATMENT OF HIS HERNIA DOES NOT CONSTITUTE AN EIGHTH AMENDMENT VIOLATION

Plaintiff started complaining about his right inguinal hernia in November, 2004, when he was incarcerated at GCCF. [Exhibit B004]. He was seen by health care providers on November 4, 2004 and issued a truss with metal clasps. [B005-008]. On January 24, 2005, in the course of a medical visit for another issue, Plaintiff complained that the truss did not fit well. [B020]. Shortly thereafter Plaintiff was moved to LCCF, the prison that is the setting for Plaintiff's Complaint.

On March 14, 2005, Plaintiff sent a request to the health services unit for a repair of his right inguinal hernia. [B027]. Plaintiff was seen that same day, advised to avoid heavy lifting and doctor appointment(s) were made for March 23, 2005 and/or April 21, 2005. As previously noted, the doctor appointment(s) were canceled and Plaintiff never saw a doctor regarding his hernia complaints until June, 2006, when he was treated for the injuries he suffered in the assault. However, Plaintiff did refuse routine medical services on June 19, 2005, and on September 14, 2005. [B028, B033]. The September 14, 2005 medical visit included an updated chart which

reflected that Plaintiff had no complaints. [B034].

Plaintiff filed an Inmate Informal Complaint on March 28, 2005 and again on March 15, 2006, both times complaining of the lack of a doctor's appointment to examine his hernia and lack of surgical treatment for his hernia. [Exhibits C001 and C007]. Both complaints were denied and Plaintiff followed up with the Inmate Grievance procedures. [C002-006, C008-015]. All grievances were denied as well. Plaintiff filed his Complaint on May 5, 2006.

Plaintiff was moved to the Geriatric Unit in Central Correctional Facility (CNMCF - Los Lunas) in September, 2006, partly as a result of the injuries he received in the assault at LCCF on June 15, 2006. On September 22, 2006, Plaintiff was issued a new truss [B100] but on October 26, 2006, Plaintiff informed the health services unit at CNMCF - Los Lunas that his hernia had worsened overnight causing him pain and stomach cramps. He also stated that the truss was not working well. [B105]. At a follow up medical visit on December 18, 2006, the doctor ordered a surgical repair of the right inguinal hernia. [B112]. The surgery was performed on January 31, 2007. [B117].

Plaintiff alleges that the Defendants were deliberately indifferent to the pain he was suffering with his inguinal hernia and that Defendants refused to surgically repair the hernia. Plaintiff claims that Defendant Wexford Health Sources had a policy not to repair any hernia unless it was strangulated although his exhibit that purportedly proves that policy does not support his statement. [Doc. No. 57, Exhibit #22]. Defendants dispute the fact that they had such a policy. It is undisputed that Plaintiff did not have his hernia surgically repaired while at LCCF under the medical care provided by Defendant Wexford Health Sources.

First, Plaintiff has been unable to show that his right inguinal hernia, while he was at

13

LCCF, was of such a nature that it was diagnosed by a physician as mandating treatment or one that was so obvious that even a lay person would have easily recognized the necessity for a doctor's attention. Plaintiff's hernia was examined prior to his move to LCCF and shortly after his arrival at LCCF by medical personnel. In both cases he was given a truss to relieve symptoms and told to avoid heavy lifting. There is nothing in the record to indicate that the hernia was of a serious nature as defined by Eighth Amendment case law. See, e.g., Mata v. Saiz, 427 F. 3d 745, 751 (10th Cir. 2005).

At most, Plaintiff is complaining of a difference of opinion between medical officials of Defendant Wexford Health Sources and Plaintiff as to the proper treatment for Plaintiff's hernia. Plaintiff believed that his right inguinal hernia should be surgically repaired.[4] According to the medical records in the *Martinez Report*, Defendant Wexford Health Sources thought the hernia could be appropriately treated with a truss and the avoidance of heavy lifting.

A difference of opinion as to elective surgery or the course of treatment for a medical condition does not rise to the level of an Eighth Amendment claim. For example, in a case involving elective heart surgery, the Court of Appeals for the Tenth Circuit wrote,

> At most, plaintiff differs with medical judgment of the prison doctor believing that he should have received his elective surgery sooner than he did. Such a difference of opinion does not support a claim of cruel and unusual punishment.

Olson v. Stotts, 9 F. 3d 1475, 1477 (10th Cir. 1993).[5]

The Martinez Report does reflect that a doctor at CNMCF-Los Lunas, not employed by

---

[4] Plaintiff had received surgical repair of bilateral inguinal hernias more than twenty years ago.

[5] The Court also noted that the plaintiff in this particular case had continued to receive treatment for his heart condition by means of medication before he received his elective surgery.

Defendant Wexford Health Sources, decided in December, 2006, that Plaintiff's right inguinal hernia should be surgically repaired. But the record also reflects that on October 26, 2006, Plaintiff stated that he had a sudden worsening of his hernia overnight, a condition that was not noted in the medical records until that date, well after he transferred from LCCF. Therefore, the fact that Plaintiff's right inguinal hernia was eventually surgically repaired cannot be used as evidence in support of a contention that either the hernia constituted a serious medical need or that a doctor had mandated, at the time he was suffering from his hernia while incarcerated at LCCF, that Plaintiff's hernia needed surgical repair as opposed to treatment with a truss.

Plaintiff has not been able to establish the first component of his Eighth Amendment claim regarding his hernia - that the hernia he suffered from during his incarceration at LCCF constituted a serious medical need. Since the undisputed material facts fail to establish that Defendants were deliberately indifferent to a serious medical need of the Plaintiff, the Court recommends that summary judgment be entered in favor of the Defendants on the claims concerning Plaintiff's hernia.

## CONCLUSION

The medical records contained in the *Martinez Report,* read in the light most favorable to the Plaintiff, establish that Plaintiff's medical needs to which Plaintiff claims the Defendants were deliberately indifferent - dentures, hearing aids, chest pains and a hernia - were not of a serious nature. Plaintiff responded to the *Martinez Report* with his own evidence but the evidence failed to establish that there are material issues of fact in dispute concerning whether these medical needs were of a serious nature. Defendants have moved for summary judgment on the Eighth

15

Amendment claims involving these four medical needs.  The Court finds that there are no material issues of fact in dispute regarding the claims that Defendants were deliberately indifferent to Plaintiff's serious medical needs.  The Court further finds that Defendants are entitled to summary judgment as a matter of law.  The Court  recommends that SUMMARY JUDGMENT BE ENTERED IN FAVOR OF THE DEFENDANTS Wexford Health Sources and Don Douglas on the remaining claims of the Plaintiff.

NOTIFICATION

THE PARTIES ARE NOTIFIED THAT WITHIN 10 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the United States District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102, pursuant to 28 U.S.C. §636 (b)(1).  A party must file any objections within the ten (10) day period allowed if that party wants to have appellate review of the proposed findings and recommendations.  If no objections are filed, no appellate review will be allowed.

_____
ALAN C. TORGERSON
UNITED STATES MAGISTRATE JUDGE